LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
E-mail: zlarson@lzlawnv.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
E-mail: mzirzow@lzlawnv.com
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170
Fax: (702) 382-1169

Attorneys for Debtor

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEVADA

In re:

GATA III, LLC,

Debtor.

Case No. 21-10690-nmc
Chapter 11

Date:  OST REQUESTED
Time:  OST REQUESTED

**MOTION TO AUTHORIZE AND APPROVE THE DEBTOR'S ENTERING INTO POST-PETITION REAL PROPERTY LEASE, WITH OPTION TO PURCHASE, WITH IEDAC USA, LLC, PURSUANT TO 11 U.S.C. § 363**

Gata III LLC, a Nevada limited liability company, as debtor and debtor in possession (the "Debtor"), submits its motion (the "Motion") to authorize and approve the Debtor's entry into a Commercial Lease Agreement (the "Lease") with Iedac USA, LLC (the "Tenant") for the premises located at 120 Cassia Way, Henderson, Nevada 89014.  This Motion is made and based on the points and authorities herein, the *Declaration of Paul Thomas* (the "Thomas Declaration") filed in support of this Motion, the papers and pleadings on file herein, judicial notice of which are requested, and any arguments made at the hearing on the Motion.  A true and correct copy of the proposed Lease is attached to the Thomas Declaration as **Exhibit 1**.

. . .

. . .

. . .

### I. Background

1. The Debtor was formed on April 26, 2018 and is managed by Paul Thomas ("Mr. Thomas"), who is the sole member of GATA II LLC, which is the Debtor's sole managing member. The Debtor owns two (2) parcels of improved real property in Clark County, Nevada as follows: (a) 375 N. Stephanie Street, Unit 3, Henderson, Nevada 89014 (the "Stephanie Property"), which is leased to a Tokyo Boys sushi bar and restaurant; (b) 120 Cassia Way, Henderson, Nevada 89014 (the "Cassia Property" and together with the Stephanie properties, the "Properties"), which is a flex-use storage and warehouse space with a gross building area of 5,944 square feet.

2. On February 15, 2021, the Debtor filed its voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), thereby commencing its bankruptcy case (the "Chapter 11 Case"). On its *Voluntary Petition* [ECF No. 1], the Debtor elected to be treated as a debtor under Subchapter V of chapter 11. Accordingly, the Debtor is authorized to operate its business and manage its Properties as debtor in possession pursuant to section 1184 of the Bankruptcy Code. On February 18, 2021, Brian D. Shapiro was appointed as the Subchapter V Trustee in the case. [ECF No. 7].

### II. Jurisdiction and Venue

3. The Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. §§ 157 and 1334, and Local Rule 1001(b)(1). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Pursuant to LR 9014.2, the Debtor consents to the entry of final orders and judgments by the bankruptcy judge. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408(1) and 1409(a).

### III. Relief Requested

4. This Motion seeks approval pursuant section 363 of the Bankruptcy Code of the Debtor's entry into the Lease, as landlord, with the Tenant for the Cassia Property. The Lease includes an option to purchase the Cassia Property, which option is not exercisable until after the Debtor's Plan (as hereinafter defined) is confirmed. No commission is owed to any real estate agent or broker for the Lease itself, but to the extent the Cassia Property is sold to the Tenant pursuant to the purchase option, a commission is then owed.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

### IV.  Statement of Facts

**A.     Pre-Petition Relevant Procedural History.**

5.     On or about April 30, 2019, the Debtor, as borrower, and certain beneficiaries, as lenders, entered into a Promissory Note Secured by Deed of Trust (the "Cassia Note") as arranged by NV Capital Corporation, LLC ("NV Capital") in the original principal amount of $1,286,000.00.  The obligations under the Cassia Note were secured with a Deed of Trust with Assignment of Rents originally recorded in the Official Records of the County Recorder, Clark County, Nevada (the "Recorder") as Instrument No. 2019501-0002656 as of May 1, 2019, and then re-recorded as Instrument No. 20190905-0002420 on September 5, 2019.

6.     On or about May 3, 2019, the Debtor, as borrower, and certain beneficiaries, as lenders, entered into a Promissory Note Secured by Deed of Trust (the "Stephanie Note") as arranged by NV Capital in the original principal amount of $1,222,000.00.  The obligations under the Stephanie Note were secured with a Deed of Trust with Assignment of Rents dated and recorded with the Recorder as Instrument No. 2019503-0002615 as of May 3, 2019, and then re-recorded as Instrument No. 20190506-0000537 on May 6, 2019.

7.     Disputes arose between the parties involving payoff and sale terms for the Properties.  The Debtor asserts that it had buyers arranged for the Properties, yet through mishandling of the loans by NV Capital, including incorrect and greatly inflated payoff quotes, the buyers were lost.  The Properties were also severely impacted by the COVID-19 pandemic, with the Cassia Property remaining unleased and thus not generating income.  On October 13, 2020, the secured lenders on the Stephanie Property caused to be recorded a Notice of Breach and Election to Sell on the Stephanie Property, and on October 14, 2020, the lenders on the Cassia Property caused to be recorded a Notice of Breach and Election to Sell on the Cassia Property.  On January 19, 2021, both lender groups caused Notices of Trustees Sales to be recorded on the Properties, which gave notice of foreclosure sales for the Properties on February 16, 2021.  The Debtor's bankruptcy filing the day before the foreclosure sales stayed the sales from proceeding by operation of the automatic stay in section 362 of the Bankruptcy Code.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

**B.    Post-Petition Relevant Procedural History.**

8.    On the Petition Date, the Debtor's *Notice of Chapter 11 Bankruptcy Case* [ECF No. 2] was filed and gave notice of the deadline for all creditors, other than governmental units, to file proofs of claim of April 26, 2021 (the "Claims Bar Date").

9.    On February 16, 2021, the Clerk entered the *Order Setting (A) Status Conference; (B) Claims Bar Date; (C) Deadline for Election Under 11 U.S.C. § 1111(b)(2); and (D) Other Deadlines* (the "Subchapter V Order") [ECF No. 4], which set various deadlines in the Chapter 11 Case, including the deadline for any secured creditors to file elections pursuant to section 1111(b)(2) of the Bankruptcy Code as ten (10) days after the filing of a plan of reorganization.

10.    On April 26, 2021, and thus on the Claims Bar Date, the very last day for filing proofs of claim in the Chapter 11 Case, the secured lenders filed the following proofs of claim against the Properties:

| Stephanie Property | POC # | POC Amount | % Interest |
|---|---|---|---|
| Business Support Team | 4 | $50,000.57 | 4.0947% |
| Charles Howard/Howard Family Trust | 5 | $671,999.80 | 55.0323% |
| Irmo and Darlene Marini | 6 | $199,999.85 | 16.3787% |
| M.N. Nagy Separate Property Trust | 7 | $199,099.85 | 16.3050% |
| Gay Lee Weinberg Living Trust | 8 | $99,999.93 | 8.1893% |
| **Total** | | **$1,221,100.00** | **100.0000%** |

| Cassia Property | | | |
|---|---|---|---|
| First Savings Bank/John Blackmon IRA | 9 | $86,000.00 | 6.687403% |
| Starlight Funding, LLC | 10 | $75,000.00 | 5.832037% |
| John & Kelli Evans | 11 | $100,000.00 | 7.776050% |
| Charles Howard/Howard Family Trust | 12 | $400,000.00 | 31.104199% |
| Rick Steven & Leticia Lopez | 13 | $250,000.00 | 19.440124% |
| Business Support Team | 14 | $50,000.00 | 3.888025% |
| Sheela Murphy Revocable Living Trust | 15 | $325,000.00 | 25.272162% |
| **Total** | | **$1,286,000.00** | **100.00%** |

11.    On May 17, 2021, the Debtor timely filed its *Chapter 11 Plan of Reorganization, dated May 17, 2021* (the "Plan") [ECF No. 33]. The Plan provides for the repayment over time of the allowed secured claims on the Properties, as well as the right to sell one or both of the Properties during the Plan's term provided that the allowed claims of the applicable secured lenders are paid in full from such sale(s). As to the Debtor's allowed general unsecured claims, the Debtor's Plan

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

proposes to pay allowed general unsecured claims a pro rata share of a "pot" of $12,980.00 in the aggregate, over the life of the Plan. The Debtor's projections in support of its Plan (Exhibit 3 thereto) assume that both of its Properties will be leased, and thus it is necessary for the Debtor to have both of them leased in order for the Plan to be feasible.

12. As of May 27, 2021, which was the deadline provided in the Subchapter V Order, no secured creditors filed an 1111(b) election. Accordingly, although the Debtor believes that the allowed secured claims asserted against each of the Properties pursuant to the filed Proofs of Claim are less than the current fair market value of the Properties, and thus that the Debtor has significant equity in those Properties, even if one or both of the groups of secured lenders are undersecured in one or both of the Properties, their claims will be bifurcated into their requisite secured and unsecured claims as a matter of law pursuant to section 506(a) of the Bankruptcy Code, with the applicable secured and unsecured portions of the claims paid accordingly via their treatments as provided in the Plan.

13. On June 11, 2021, the Debtor filed its *Ex Parte Motion for Order Re: Fixing of Deadlines and Procedures in Subchapter V Case Relating to Proposed Chapter 11 Plan of Reorganization* [ECF No. 35], which was granted by an order entered on June 14, 2021 (the "Procedures Order"). Pursuant to the Procedures Order, confirmation of the Debtor's Plan is set for hearing on August 10, 2021 (the "Confirmation Hearing"). The Procedures Order also set forth a briefing schedule for objections to confirmation, and replies thereto, and a deadline for the submission of declarations/affidavits in support of any objections to or replies in support of confirmation of the Plan.

14. On July 7, 2021, the Debtor filed its *Objection to Proofs of Claim of Charles Howard, Trustee of the Howard Family Trust Dated March 7, 1997, Claim Nos. 5 and 12* (the "Howard Claim Objection") [ECF No. 54], which sought to disallow, in part, the asserted proofs of claim of Charles Howard, Trustee of the Howard Family Trust Dated March 7, 1997 (the "Claimant") as follows: (a) Claimant's Proof of Claim No. 5 by $440,531.36, and thus leaving the Claimant with a remaining allowed secured claim in the total amount of only $230,973.51 against the Stephanie Property; and (b) Claimant's Proof of Claim No. 12 by $310,697.60, and thus leaving

5

the Claimant with a remaining allowed secured claim in the total amount of only $89,302.40 against the Cassia Property. Accordingly, if the Howard Claim Objection is sustained in the Debtor's favor as filed, the total allowed secured claims held by the secured lenders against the Debtor's Properties will be reduced to only $780,073.71 in secured debt against the Stephanie Property ($1,221,100.00 - $440,531.36 = $780,073.71), and $975,302.40 in secured debt against the Cassia Property ($1,286,000.00 - $310,697.60 = $975,302.40).

**C.   The Proposed Lease for the Cassia Property.**

15.   The Lease is for a period of twelve (12) months, thus extending until August 1, 2022, with rent of $7,200 a month, plus the HOA/management monthly fees of $385, and the quarterly real property taxes for the property. The Tenant is required to provide a security deposit in the amount of $10,000, plus first month's rent and HOA fees, prior to moving in. Thus, the Debtor will be in receipt of funds in the amount of $17,585 upon the execution of the Lease. The Lease also provides the Tenant with an option to renew for an additional 3 or 12 months.

16.   Furthermore, the Lease provides the Tenant with a purchase option for the Cassia Property, with a purchase price of $1,400,000.00 during the first year, and increasing to $1,450,000 during the second year. In the event the Tenant does exercise the purchase option, the Tenant shall receive $1,200.00 in credit toward the purchase for each month rent has been paid.

17.   The Tenant is owned by Neal Jensen ("Mr. Jensen"), the sole manager of the Tenant, and Mr. Jensen has executed a personal guaranty to secure the payments under the Lease. For the avoidance of doubt, the Tenant is not involved in the cannabis industry, and has represented in the Lease that it will be conducting an internet-related business on the premises. The Lease was negotiated in good faith and at arm's length, and pursuant to standard business terms. There is no prior association or connection between the Debtor, or its principal, Mr. Thomas, and the Tenant or its principal, Mr. Jensen.

## V.   Legal Argument

**A.   The Lease is Permitted Pursuant to 11 U.S.C. § 363(c).**

18.   Pursuant to section 363(c) of the Bankruptcy Code, a debtor may "enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business,

without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c).

19.  Two tests are used to assess whether a post-petition agreement is in the ordinary course of a debtor's business: the horizontal dimension test and the vertical dimension or creditor's expectation test. See Burlington Northern Railroad Co. Dant & Russell, Inc. (In re Dant & Russell, Inc.), 853 F.2d 700, 704 (9th Cir. 1988); Aalfs v. Wirum (In re Straightline Invs., Inc.), 525 F.3d 870, 879-880 (9th Cir. 2008). The horizontal dimension test involves application of an industry-wide perspective in which the debtor's business is compared to other like businesses. See Dant & Russell, 853 F.2d at 704. In this comparison, the test is whether the postpetition transaction is of a type that other similar businesses would engage in as ordinary business. See id. (citing In re Johns-Manville Corp., 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986)). The test comports with the construction of the term in other sections of the Bankruptcy Code; namely, that a transaction occurs in the debtor-in-possession's ordinary course of business when there is a showing that the transaction is the sort occurring in the day-to-day operation of a debtor's business. See id. The Ninth Circuit in Dant & Russell further described the burden under the horizontal dimension test as follows:

> This showing is required merely to assure that neither the debtor nor the creditor did anything abnormal to gain an advantage over other creditors; an extensive showing that such transactions occurred often, or even regularly, is not necessary. The transaction need not have been common; it need only be ordinary. A transaction can be ordinary and still occur only occasionally.

Id. (quoting In re Economy Milling Co., Inc., 37 B.R. 914, 922 (D.S.C. 1983)).

20.  The vertical dimension, or creditor's expectation test, views the transaction in question "from the vantage point of a hypothetical creditor and inquires whether the transaction subjects a creditor to economic risks of a nature different from those he accepted when he decided to extend credit." Id. (quoting Johns-Manville, 60 B.R. at 616). This test was first articulated in In re James A. Phillips, Inc., 29 B.R. 391 (S.D.N.Y. 1983), which stated as follows:

> The touchstone of "ordinariness" is . . . the interested parties' reasonable expectations of what transactions the debtor in

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

7

> possession is likely to enter in the course of its business. So long as the transactions conducted are consistent with these expectations, creditors have no right to notice and hearing, because their objections to such transactions are likely to relate to the bankrupt's Chapter 11 status, not the particular transactions themselves.

Id. at 394.

21. The creditor's expectation test was reformulated as the vertical dimension test in In re Waterfront Cos., Inc. v. Johnston, 56 B.R. 31, 35 (Bankr. D. Minn. 1985). There, the district court noted that "[s]ome transactions either by their size, nature or both are not within the day-to-day operations of a business and are therefore extraordinary." Id. Under this formulation, the debtor-in-possession's prepetition business activities are compared to its post-petition transactions. See In re DeLuca Distrib. Co., 38 B.R. 588, 594 (Bankr. N.D. Ohio 1984) (finding that it was in the debtor's ordinary course of business to enter into new, post-petition collective bargaining agreement where it had done so prepetition).

22. As applied in the case at hand, under either formulation, entering into the Lease is an ordinary course transaction that the Debtor may enter into without court approval pursuant to section 363(c) of the Bankruptcy Code. In particular, the Debtor's very business is the owning and leasing of its Properties, thus necessitating that the Debtor regularly enters into leases. Out of an abundance of caution, however, as so as to ensure that the Lease is fully effective, the Debtor files this Motion to confirm such authorization, and thus to receive a "comfort order" confirming that the transaction is in the ordinary course, and thus is appropriate.

B.  **In the Alternative, the Lease Should Be Approved Pursuant to 11 U.S.C. § 363(b).**

23. In the alternative, even if the Debtor's entering into Lease is not in the ordinary course of its business, section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1).

24. In order to obtain approval of a transaction that is outside the ordinary course of a debtor's business pursuant to section 363(b)(1) of the Bankruptcy Code, a debtor need only demonstrate "some articulated business justification" for the proposed use, sale or leasing of property of the estate. Walter v. Sunwest Bank (In re Walter), 83 B.R. 14, 19-20 (B.A.P. 9th Cir.

1988) (quoting <u>In re Continental Air Lines, Inc.</u>, 780 F.2d 1223, 1226 (5th Cir. 1986), and in turn citing <u>Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)</u>, 722 F.2d 1063, 1069-71 (2d Cir. 1983)).

25. In specifically examining the proposed transaction in question that is outside the ordinary course of a debtor's business:

> [T]he bankruptcy judge should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike. He might, for example, look to such relevant factors as the proportionate value of the asset to the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis-a-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions and, most importantly perhaps, whether the asset is increasing or decreasing in value. This list is not intended to be exclusive, but merely to provide guidance to the bankruptcy judge.

<u>Walter</u>, 83 B.R. at 20 (quoting <u>In re Continental Air Lines, Inc.</u>, 780 F.2d at 1226). The Court may also look to whether a good faith standard has been met, whether the sale or use of property is fair and equitable, and whether the sale or use is in the best interest of the estate. <u>See</u> 3 <u>Collier on Bankruptcy</u> ¶ 363.02[1][f] (Alan N. Resnick, et al., 15th ed. 2007).

26. As applied in the case at hand, if the Court determines that the Lease is outside the ordinary course of the Debtor's business, and thus must be approved pursuant to section 363(b) of the Bankruptcy Code, entering into the Lease is a proper and reasonable exercise of its business judgment. In particular, the Lease allows the Debtor to lease up its one vacant property to provide a sufficient income stream to fund the Plan, and indeed having both of the Properties fully leased and generating income is necessary in order for the Plan to be feasible.

C. **Waiver of Any Stay of Effectiveness of the Order is Necessary and Appropriate.**

27. Pursuant to Bankruptcy Rule 6004(h), "an order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." In the case at hand, however, good cause exists for the

Court to waive any stay of the effectiveness of the order granting this Motion, such that the order is effective immediately upon its entry because the Motion presents approval of a Lease that is set to commence as of August 1, 2021, and the Lease is important to the Debtor's pending Plan that is set for a Confirmation Hearing as of August 10, 2021, and thus the parties need to know whether the transaction is authorized and approved as soon as possible.

### Conclusion

WHEREFORE, the Debtor requests that the Court enter the proposed form of order attached hereto as **Exhibit 2**, thereby authorizing and approving the Lease pursuant to section 363 of the Bankruptcy Code. The Debtor also requests such relief as is just and proper.

Dated: July 26, 2021.

By:    /s/ Matthew C. Zirzow      
LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
850 E. Bonneville Ave.
Las Vegas, Nevada 89101

Attorneys for Debtor